IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN A. FRENCH, JR.,

      Plaintiff,        OPINION AND ORDER

 v.

                     20-cv-434-slc

MS. CINDY BUCHANAN,
DR. MARTHA MASCIOPINTO,
G. FITZPATRICK, and
DR. JUSTIN RIBAULT,

      Defendants.

*Pro se* plaintiff John French, a prisoner currently incarcerated at Columbia Correctional Institution (Columbia), is proceeding in this lawsuit under 42 U.S.C. § 1983. French claims that defendants, all Columbia employees, violated his Eighth Amendment rights with respect to their treatment of his seizure condition and Crohn's disease. Along with his complaint, French submitted a motion for a preliminary injunction, requesting that the court order that French be seen by a qualified specialist. (Dkt. 16.) Defendants have responded and French's motion now fully briefed.

 Having reviewed the parties' submissions, I conclude that French has not shown a likelihood of success on the merits of his claim that defendants are responding to his serious medical needs with deliberate indifference or that he has no adequate remedy at law. Accordingly, I am denying his motion.

OPINION

I.    **Motion for Preliminary Injunction (dkt. #16)**

   A.    **Undisputed Facts**[1]

Plaintiff John French was transferred to Columbia on December 17, 2019. In his declaration in support of his motion, French attests that:

- He suffers from severe neuropathy, a heart condition, Crohn's, and incontinence.

- He has been denied Humira, medical showers, sanitary wipes, medical laundry, and neurogenic pain medication.

- When he was incarcerated at Jackson Correctional institution, he received Depends for his incontinence, allowed to shower every day, do laundry, and was prescribed Depakot 500 mg twice daily by a neurologist.

- After his transfer to Columbia, he experienced seizures and Crohn's flare-ups, which defendants Buchanan, Dr. Masciopinto, and Dr. Ribault ignored.

- French has not been referred to a neurologist or gastroenterologist for evaluation.

- French cannot undergo an EEG at Columbia; he needs to go to a hospital.

- French's seizures are "very active, and the neuropathy is very painful."

(French Decl. (dkt. 17) ¶¶ 2-9.) French also has attached the inmate complaints related to his medical care and request to for a referral to specialists, which indicate that French disagrees with the treatment decisions of his care providers. (*See* dkts. 17-15, 17-16.)

Defendant Dr. Justin Ribault was French's primary physician at Columbia until December 9, 2020. In response to French's motion, Dr. Ribault reviewed French's Health Service Unit ("HSU") medical file and French's medical records from Broward County Jail in Florida. Based on that review, Dr. Ribault opines that French does not suffer from Crohn's

---

[1] Except where noted, the court draws the following, undisputed facts from French's declaration in support of his motion for preliminary injunction and defendants' evidence in opposition.

2

disease, a seizure disorder, or incontinence, and that his neuropathy does not require a different treatment plan or referral to an off-site specialist. Rather, French has self-reported suffering from Crohn's, a seizure disorder, and incontinence, but there is no verifying evidence that he suffers from these conditions, requires medications, or should be referred to an off-site specialist. Further, in Dr. Ribault's opinion, French's access to Cymbalta is sufficient to treat his neuropathy. I address each condition in turn.

Crohn's disease is a type of inflammatory bowel disease that causes inflammation of the digestive tract, which is often associated with abdominal pain and diarrhea. It is diagnosed based on objective data. At Columbia, French has submitted numerous HSRs requesting a prescription of Humira to treat his self-reported Crohn's disease. However, when Dr. Ribault reviewed French's medical records to assess whether to prescribe him Humira, Dr. Ribault could not find medical records or documentation that French had ever been diagnosed with Crohn's. Dr. Ribault reached that conclusion based on the following information gleaned from French's medical records from March 26, March 26, October 1, and October 13 of 2020:

- French self-reported bloody diarrhea with a history of Crohn's disease.
- In April of 2019, during a hospital stay for chest pain, a gastroenterologist ("GI") met with French for dysphagia, but the GI did not diagnose French with any specific condition. Instead, French was prescribed Tums, which expired in October 2019 and then restarted in January 2020.
- On June 11, 2019, abdominal imaging was ordered due to French's complains of pain. The imaging showed diverticulosis but otherwise was normal. (Diverticulosis is a different condition from Crohn's.)
- An August 27, 2019, Milwaukee County Jail transfer summary mentions that

- French has Crohn's. However, Dr. Ribault was unable to find substantiating documentation.

- On September 16, 2019, an HSU nurse reported during a sick call that French reported "frequent stools with blood at times due to his colitis [diagnosis]." However, French did not show up for his September 30 follow-up appointment. (Ribault Decl., dkt. 34, ¶ 16.)

- On October 2, 2019, HSU tried to obtain a stool specimen from French, but he refused and used foul language.

- On October 17, 2019, an HSU provider wrote that French "wants to know when his GI appt is since I told him he had Crohn's," but the provider commented that prior to this interaction, French never complained of bloody diarrhea. (Ribault Decl., dkt. 34, ¶ 18.)

- On October 29, 2020, APNP Kramer wrote in a progress note that French reported that in 2014, while at a prison in Ohio, he had been diagnosed with Crohn's. Kramer noted a consideration for a colonoscopy, but Dr. Ribault is unaware whether that has been ordered. (*Id.* ¶ 19.)

Based on this information, Dr. Ribault opines that French's self-reported Crohn's is not supported by objective data. Since Dr. Ribault did not diagnose French with that condition, he did not prescribe French Humira, which is a prescription medicine used to reduce signs and symptoms of Crohn's. Dr. Ribault reasons that someone who does not suffer from Crohn's takes a substantial risk by taking Humira unnecessarily, explaining that Humira can reduce the immune system's ability to fight infections. Dr. Ribault further believes that it was not clinically indicated to refer French for an off-site consultation, especially since it is a significant

undertaking to send a patient out for an off-site consultation, and French did not present with a pattern of symptoms justifying such a referral.

Nor did Dr. Ribault believe that French requires treatment for seizures. A seizure is a sudden, uncontrolled electrical disturbance in the brain. There are different types of seizures, and the cause can be organic, meaning that the seizures occur due to an inherent issue within the brain matter, or the cause may be external and temporary, such as low blood sugar or side effects of drugs and alcohol. Seizure-like activities can occur that do not constitute a seizure disorder, and a psychiatric diagnosis may play a role in seizure-like activities.

French self-reported a seizure disorder, but after Dr. Ribault reviewed French's medical records in March of 2020, he was unable to find any medical record or documentation consistent with French's belief that he suffers from an organic seizure disorder. Dr. Ribault makes the following observations about French's medical records related to his perceived seizure disorder:

- On May 31, 2018, French reported to HSU that he experienced a grand mal seizure, and seizures while he was in the custody of the Broward County Jail in Florida. However, the records Dr. Ribault reviewed from the jail do not correlate with this claim. French claimed that the only witnesses to his seizures were his cellmates, and he never notified the unit manager or any correctional officers about his seizures.

- On June 29, 2018, French refused to have an electroencephalogram (EEG), stating that he was not feeling well and just did not want to do it. (An EEG test is used to diagnose and monitor seizure disorders.)

- On July 19, 2018, French refused an MRI, stating that he was too sore. Later that

5

day, French reported to the HSU that he was not interested in having an EEG.

- On September 19, 2018, the following HSU note was created: "Pt request to discontinue gabapentin and topiramate . . . [patient] reports that he was put on the medication for seizures and migraines and would like to discontinue them. French wrote in his HSR that, 'I don't feel like I need the medication any longer.'" (Ribault Decl., dkt. 34, ¶ 48.)

- On October 9, 2018, French refused an off-site appointment for an MRI of his head because he was no longer taking the medication. The note also indicated that French had no complaints of seizure-like activity mentioned in the time frame that he reported to the neurologist in November. (*Id.* ¶ 49.)

- On June 19, 2019, during a nurse sick call, and on November 18, 2020, French reported that he had suffered a grand mal seizure in Florida.

- On June 20, 2019, French complained to Dr. Lily Liu that he was having seizures at night and that he experienced a grand mal seizure while incarcerated at Broward Prison in Florida in 2017. French also told Dr. Liu that he had been started on gabapentin, Topamax, and Dilantin, and that he had an MRI, but had not seen a neurologist. French also reported having mini-seizures for the prior two weeks, which had increased from 1-2 episodes a day to 4-6 episodes a day. French told Dr. Liu that the episodes lasted 30-45 seconds.

- On June 25, 2019, French was taken to Sacred Heart Hospital for chest pain, where he reported "no history of seizures, TIA or stroke." (*Id.* ¶ 54.)

- A November 5, 2019, neurology note included a comment that French has a

significant self-reported seizure history.

- On March 26, 2020, Dr. Ribault noted in French's medical chart that there is no objective documentation that French has a significant GI diagnosis or seizure disorder.
- On October 13, 2020, Dr. Ribault reviewed French's Broward County Jail medical records. Those records show that in August 2017, French self-reported a seizure history. Dr. Ribault noted that French's seizure events were never witnessed, and they seemed to occur exclusively at night.
- On February 18, 2018, French reported a mini seizure, and on February 13, 2018, French notes suffering mini seizures at night.
- On March 10, 2018, French submitted a note reporting that his anxiety was not controlled and that he would "wake right up and be shaking." (Ribault Decl., dkt. 34, ¶ 57.)
- On March 22, 2018, French reported back pain resulting from a fall he suffered when he had a seizure in his bed. During an April 23, 2018, sick call request, French mentioned suffering a seizure at the beginning of the month.

Based on these medical records, Dr. Ribault did not believe that French may have an organic seizure disorder that would necessitate medication. Dr. Ribault states that he would be hesitant to prescribe seizure medication unnecessarily, since seizure medication carries the risk of liver disease, neurological disorders, and/or bleeding disorders. Dr. Ribault likewise does not believe it would be appropriate to refer French for an off-site consultation.

Dr. Ribault's opinion is the same with respect to French's self-reported incontinence. There are two types of incontinence: urinary and bowel/fecal incontinence. Urinary

7

incontinence causes accidental leakage of urine. It is not a disease, but a symptom of another condition that causes a loss of bladder control. Bowel incontinence is the inability to control bowel movements, causes feces to leak unexpectedly from the rectum. It ranges from an occasional leakage of stool while passing gas to a complete loss of bowel control.

French self-reported numerous incontinence accidents that have only been witnessed by his cellmate. Dr. Ribault attests that he is not aware of Columbia staff, French's Unit Manager, or HSU staff having witnessed an incontinence accident. Further, Dr. Ribault was unable to find any documented, objective evidence that French has a significant incontinence issue. Instead, based on Dr. Ribault's review of French's medical history, he believes French may suffer from some minor urinary incontinence. However, in Dr. Ribault's medical opinion, it does not necessitate an order for medical showers, sanitary wipes, medical laundry, or a single cell, since these orders should be reserved for patients with a documented issue of significant incontinence. Dr. Ribault was unable to find evidence of such.

Dr. Ribault adds that in his experience, many inmates self-report urinary and bowel incontinence so they can take advantage of the care inmates who are diagnosed with incontinence receive, which includes daily showers, bed sheet changes and fresh clothes. Moreover, Dr. Ribault explains that French's incontinence issues have not been ignored by Columbia staff. Inmates at Columbia that have an accident due to an incontinence problem may shower, access a change of clothes, and may wash their clothes for free.

Finally, Dr. Ribault agrees that French suffers from neuropathy, but has concluded that French's prescription for Cymbalta is appropriate. Neuropathy is damage or dysfunction of one or more nerves that typically results in numbness, tingling, muscle weakness, and/or pain in the extremities. Neuropathies frequently start in the hands and feet, but other parts of the

body can be affected.

Dr. Ribault attests that French has a very poor history of taking his medications as prescribed. Specifically, in June 2017 French discontinued Cymbalta, a medication used to treat neuropathy, reporting that the medication was not helping with his pain. However, on October 1, 2020, Dr. Ribault prescribed French Cymbalta again. Dr. Ribault reasoned that French should restart it and take the prescribed dose for an extended period of time, so that French could see whether it worked and then decide if he wanted to discontinue it. Dr. Ribault explains that Cymbalta usually takes 2 to 4 weeks to work, and it may take longer for serve pain. He adds that common side effects include feeling sick, dry mouth, headache, constipation, and feeling sleeping, but that these side effects are usually mild and do not persist past a few weeks.

### B. Analysis

A preliminary injunction is an "extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015) (internal citation omitted). The Seventh Circuit instructs that a district court should engage in a two-step analysis in evaluating a request for preliminary relief. "In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Id.* at 661-62. If the moving party meets this first burden, then the court must weigh the factors against one another in a sliding scale analysis to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving

party (or public interest) will be harmed sufficiently, such that the injunction should be denied. (*Id*.) The Prison Litigation Reform Act ("PLRA") further limits the court's authority to enter injunctions in the prison context by prescribing that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quoting 18 U.S.C. § 3626(a)(1)(A)).

I am denying French's motion because he has not shown a likelihood of success on the merits of any of his claims, and because French has not shown he lacks an adequate remedy at law. To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). "Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). I will accept at this stage that French's various ailments constitute serious medical needs, so the question is whether the evidence suggests a likelihood that French can prove defendants are responding to those conditions with deliberate indifference.

Deliberate indifference constitutes more than negligent acts, or even grossly negligent acts, although it requires something less than purposeful acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious

10

harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it. *Id*.at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance."); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense").

French has not come forward with evidence calling into question Dr. Ribault's opinion that French does not suffer from Crohn's disease, and that it would be risky to prescribe French Humira without confirmation that he suffered from Crohn's because of this medication's side effects. Furthermore, even assuming there is some question about whether French is suffering from a yet to be diagnosed GI-related issue, the record indicates that *French* has thwarted the HSU staff's effort to diagnose him: he did not attend scheduled appointments and refused to provide a requested stool sample. As such, on this record, it does not appear French can show that Dr. Ribault failed to exercise medical judgment in declining to prescribe Humira or refer French for an off-site consultation.

The result is the same with respect to French's alleged seizure disorder. Dr. Ribault was unable to verify that French actually suffers from an organic seizure disorder. The only indicator from French's medical records suggesting that French suffers from a disorder are his self-reported seizures, which, as Dr. Ribault notes, have only ever occurred in the presence of his cellmate and at night. And, similar to his GI issues, the absence of any corroborating records may very well be due to French's refusal to submit for an EEG or MRI. Given this absence of evidence, the health risks associated with a seizure medication, and the burden of an off-site

11

Case: 3:20-cv-00434-slc Document #: 49 Filed: 05/28/21 Page 12 of 14

consultation, I see no basis to question Dr. Ribault's judgment call not to prescribe any medication for him or to recommend and off-site consultation.

As for French's incontinence, again, there is no evidence that French has experienced any issues beyond some minor urinary incontinence, and French has access to showers and clean clothing in the event of an accident. There is no basis to infer that Dr. Ribault or any Columbia staff have been responding to French's incontinence with deliberate indifference.

Finally, French's neuropathy is being treated. Dr. Ribault's view is that French should be able to try taking Cymbalta at the prescribed dose, for a long enough time to assess whether it is effective. Although French claims he has been taking this medication since Dr. Ribault treated him and it is ineffective, he has not submitted evidence that he has been taking that medication as prescribed. More importantly, French has not submitted evidence showing that that he has informed Columbia HSU staff that Cymbalta is ineffective and that HSU staff nonetheless has insisted that he continue taking it. In any event, physicians are entitled to considerable deference for decisions regarding pain medications. *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019) (jail staff's decision not to provide detainee desired prescription pain medication was not objectively unreasonable); *Burton v. Downey*, 805 F.3d 776, 785-86 (7th Cir. 2015) (doctor's refusal to prescribe narcotic did not violate detainee's constitutional rights, despite another doctor's prescription for it). Absent any evidence that French has been taking Cymbalta as prescribed and that any of the defendants are aware that the medication is ineffective, I cannot conclude that French is likely to show deliberate indifference.

French does not dispute that he received the treatment above, nor does not contest the validity of Dr. Ribault's judgment. Rather, in reply, he restates his belief that he is not being treated for his conditions, which, at most, amounts to a disagreement with Dr. Ribault's

judgment. This is far from showing a likelihood of success of the merits of an Eighth Amendment claim. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.") (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)); *see also Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (while a prisoner is entitled to reasonable measure to prevent a risk of harm, he "is not entitled to the best care possible"). Similarly, French claims that he was unable to walk to the HSU for his September 30, 2019, appointment, but he does not explain why he refused to (1) provide a stool sample or (2) undergo an EEG or MRI at Columbia,

French also points out that Dr. Ribault only recently started treating him, and that defendant Dr. Masciopinto had been handling his care up until April or May of 2020, at which point she was terminated for lying. French also claims that defendant Fitzpatrick was terminated for lying. French does not substantiate these claims with any evidence, and French's vague and unsupported assertions about past events do not suggest he his current medical needs are not being met.

Finally, even assuming French could show a likelihood of success on the merits, he has failed to submit evidence that he is suffering irreparable harm or that there is no adequate remedy at law. Indeed, beyond his reported symptoms, French's medical records do not suggest that his current medical needs are being ignored or handled in a blatantly inappropriate manner. Accordingly, French has also failed to show that he has no adequate remedy at law. For that reason as well, I am denying his motion for a preliminary injunction.

ORDER

IT IS ORDERED that plaintiff John French's motion for a preliminary injunction (dkt. 16) is DENIED.

Entered this 28th day of May, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge